Michael J. Marone, Esq.
**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
(973) 425-0161
Attorneys for Defendant,
IMS Trading Corporation a/k/a IMS Pet Industries

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIE DOPICO, for plaintiff and the class of members defined herein,<br><br>              Plaintiff,<br><br>    v.<br><br>IMS TRADING CORP., IMS PET INDUSTRIES, INC., and JOHN DOE CORPS. 1-10,<br><br>              Defendants. | Civil Action No.<br><br><br><br><br><br>**NOTICE OF REMOVAL** |

**TO:**        William T. Walsh
             Clerk of the District Court
             United States District Court
             District of New Jersey
             Martin Luther King, Jr. Building & U.S. Courthouse
             50 Walnut Street
             Newark, New Jersey 07101

**ON NOTICE TO:**    Clerk
             Superior Court of New Jersey
             Middlesex County
             56 Paterson Street
             New Brunswick, New Jersey 08903-0964

             Michael J. Epstein, Esq.
             The Epstein Law Firm, P.A.
             340 West Passaic Street
             Rochelle Park, New Jersey 07662
             Attorneys for Plaintiff

Bruce Nagel, Esq.
Nagel Rice, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
Attorneys for Plaintiff

**PLEASE TAKE NOTICE** that Defendant IMS Trading Corporation a/k/a IMS Pet Industries (improperly pled as IMS Pet Industries, Inc.) ("Defendant"), through undersigned counsel, hereby remove the above-captioned action from the Superior Court of New Jersey, Law Division, Middlesex County, to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§1332, 1441, 1446 and 1453 and respectfully state:

1.      On or about January 14, 2014, Plaintiff Marie Dopico ("Plaintiff") commenced this putative class action against Defendant by filing a Class Action Complaint ("Complaint") in the Superior Court of the State of New Jersey, Law Division, Middlesex County, bearing Docket No. MID-L-269-14.

2.      As more fully set out below, this case is being properly removed to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1441 because Defendant has satisfied the procedural requirements for removal and said Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332.

**I.      DEFENDANT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL**

3.      The Complaint was served on Defendant on February 21, 2014.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

4.      The Superior Court of the State of New Jersey, Law Division, Middlesex County is located within the District of New Jersey.  Therefore, venue is proper within the District of

New Jersey pursuant to 28 U.S.C. § 110 and 28 U.S.C. § 1441 because said district is the district and division embracing the place where such action is pending.

5.      No previous application has been made for the relief requested herein.

6.      Pursuant to 28 U.S.C. §1446(a), a copy of all process, pleadings, and orders served upon Defendant, which papers include the summons, is attached as Exhibit A.  Pursuant to 28 U.S.C. §1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of the State of New Jersey, Law Division, Middlesex County.

## II.      REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

7.      This case is subject to removal pursuant to the Class Action Fairness Act of 2005 ("CAFA").  See Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C. including 28 U.S.C. 1332).

8.      As set forth below, this is a putative class action in which:  (1) there are 100 or more members in Plaintiff's proposed class; (2) at least some of the members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed the sum or value of $5,000,000 in the aggregate.  Thus, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

### A.      Class Action Consisting Of More Than 100 Members

9.      In the Complaint, Plaintiff purports to represent a nationwide (with exception of Louisiana and Puerto Rico) class of individuals who purchased "any dog treat product containing duck jerky manufactured or sold by defendants and containing duck imported from China, on or after a date six years prior to the filing of this action."  (Ex. A, Complaint, ¶40).  In addition, Plaintiff purports to represent a nationwide (with exception of Louisiana and Puerto Rico)

subclass of individuals "whose dogs suffered harm or death due to the consumption of defendants' products." (Complaint, ¶41).

10.     Plaintiff asserts that the purported class and subclass include "*thousands* of persons [who] purchased the dog treats at issue" as well as any individuals whose "dogs died or became ill as a result." (Complaint, ¶42) (emphasis added). Thus, Plaintiff alleges that, more likely than not, the putative class has in excess of 100 members.

### B.     Diversity of Citizenship

11.     Plaintiff is a citizen of the State of New Jersey. (Complaint, ¶5).

12.     In the Complaint, Plaintiff purports to represent a nationwide class (with exception of Louisiana and Puerto Rico) of individuals who purchased "any dog treat product containing duck jerky manufactured or sold by defendants and containing duck imported from China, on or after a date six years prior to the filing of this action." (Complaint, ¶40). In addition, Plaintiff purports to represent a nationwide subclass (with exception of Louisiana and Puerto Rico) of individuals "whose dogs suffered harm or death due to the consumption of defendants' products." (Complaint, ¶41).

13.     Defendant is a New York corporation with its principal place of business located at 34 Passaic Street, Wood Ridge, New Jersey 07075.

14.     Thus, at least one proposed class member and Defendant are diverse.

### C.     The Amount-In-Controversy Requirement Is Satisfied

15.     The claims of the individual class members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. See 28 U.S.C. § 1332(d)(6). Under this aggregated standard, Plaintiff's claim manifestly meets the jurisdictional threshold.

16.     Plaintiff alleges five separate claims: (1) breach of express warranty; (2) violation of the New Jersey Consumer Fraud Act; (3) unjust enrichment, (4) strict products liability – defective design or manufacture; and (5) strict products liability – failure to warn.  Based on these allegations, Plaintiff seeks several forms of relief, including, but not limited to, the following: compensatory damages, treble damages, punitive damages, costs and attorneys' fees. (Complaint, "WHEREFORE" clauses, Counts I-V).

17.     Plaintiff claims that Defendant's "products containing duck jerky [] sold under defendants' brand" were "unhealthy and dangerous to the health of plaintiffs' pets" and that "Defendants intentionally concealed known facts concerning the safety of their dog treats in order to increase or maintain sales." (Complaint, ¶¶17, 29).  Plaintiff further alleges that as a result of Defendant's alleged conduct, Plaintiff and members of the class suffered an ascertainable loss of money or property.  (Complaint, ¶¶38, 39, 55).

18.     Plaintiff seeks compensatory damages including, but not limited to, "[v]eterinary expenses and other costs incurred in treating [a dog] and attempting to save [the dog's] li[fe]" and "[t]he cost of defendants' product."  (Complaint, ¶¶38, 39).  Plaintiff alleges that "[c]onsumers in New Jersey and across the United States suffered damages similar to those suffered by plaintiff as a result of defendants' conduct." (Complaint, ¶39).  The ascertainable loss of Plaintiff and the putative class is alleged to be "the illnesses and deaths suffered by consumers' pets" and the purchase price of the product. (Complaint, ¶¶55, 56)  Plaintiff also seeks treble compensatory damages under the New Jersey Consumer Fraud Statute.  (Complaint, ¶54).

19.     Under the NJCFA, compensatory damages may be trebled (N.J. Stat. Ann. §56:8-19), and the award of reasonable attorneys' fees, filing fees and reasonable costs of suit under the NJCFA must be taken into account when determining the amount in controversy.  Lawton v.

Basic Research, 2011 WL 1321567 at *4 (D.N.J. Apr. 4, 2011) (finding that attorneys' fees under the NJCFA must be considered in calculating the amount in controversy under CAFA); see also Frederico v. Home Depot, Inc., 507 F. 3d 188, 199 (3d Cir. 2007) (stating "attorneys' fees which can exceed six figures in a class action and are properly aggregated and considered for purpose of determining the amount in controversy under CAFA"). Further, the Third Circuit has stated that attorneys' fees under the NJCFA can be estimated at 30% of the judgment. Frederico, 507 F. 3d at 199.

20.     Plaintiff purports to bring this action on behalf of a nationwide (with exception of Louisiana and Puerto Rico) class of individuals who purchased "any dog treat product containing duck jerky manufactured or sold by defendants and containing duck imported from China, on or after a date six years prior to the filing of this action." (Complaint, ¶40). In addition, Plaintiff purports to represent a nationwide (with exception of Louisiana and Puerto Rico) subclass of individuals "whose dogs suffered harm or death due to the consumption of defendants' products." (Complaint, ¶41).

21.     Taken in the aggregate, the amount in controversy exceeds $5,000,000 given: (a) the breadth of the proposed nationwide class and subclass; (b) the damages sought by each such individual of the putative classes (including in treble damages and counsel fees); and (c) the six year time frame for which damages are sought. It is respectfully submitted that the jurisdictional threshold has been satisfied.

22.     Finally, CAFA's legislative history sets forth that doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. See, e.g., S. REP. 109-14 at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if

properly removed by any defendant."), id. at 35 (the intent of CAFA "is to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications"), id. at 27 ("the Committee believes that the federal courts are the appropriate forum to decide most interstate class actions because these cases usually involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy.").

WHEREFORE, Defendant respectfully removes this action from the Superior Court of the State of New Jersey, Law Division, Middlesex County, to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §1441.

Respectfully submitted,

McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLC
Attorneys for Defendant,
IMS Trading Corporation


By: _s/ Michael J. Marone_____
    Michael J. Marone

Dated: March 20, 2014

# EXHIBIT A

Michael J. Epstein, Esq. - 034101996
**THE EPSTEIN LAW FIRM, P.A.**
340 West Passaic Street
Rochelle Park, New Jersey 07662
(201) 845-5962
Attorneys for Plaintiff

Bruce Nagel, Esq. - 025931977
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, NJ 07068
(973)618-0400
Attorneys for Plaintiff

| | |
|---|---|
| MARIE DOPICO, for plaintiff and the class of members defined herein, <br><br> Plaintiff, <br><br> v. <br><br> IMS TRADING CORP., IMS PET INDUSTRIES, INC., and JOHN DOE CORPS. 1-10 (names fictitious as presently unknown), <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION - MIDDLESEX COUNTY DOCKET NO. MID-L-269-14 <br><br> <u>Civil Action</u> <br><br> SUMMONS |

FROM THE STATE OF NEW JERSEY TO THE ABOVE-NAMED DEFENDANTS:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management office in the county listed above and online at the website listed below.

If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy

clerk of the Superior Court) must accompany your answer or motion when
it is filed.  You must also send a copy of your answer or motion to
plaintiff's attorney whose name and address appear above, or to
plaintiff, if no attorney is named above.  A telephone call will not
protect your rights; you must file and serve a written answer or motion
(with fee of $135.00 and completed Case Information Statement) if you
want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35
days, the court may enter a judgment against you for the relief
plaintiff demands, plus interest and costs of suit. If judgment is
entered against you, the Sheriff may seize your money, wages or
property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services
office in the county where you live or the Legal Services of New Jersey
Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529).  If you do not
have an attorney and are not eligible for free legal assistance, you
may obtain a referral to an attorney by calling one of the Lawyer
Referral Services available in the Civil Division Management office in
the county listed above and online at the website listed below.

**WEBSITE:**

http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf

                                        /s/ Michelle M. Smith
                                        Clerk of the Superior Court

Dated:

Name and Address
of Defendant to be served:        IMS TRADING CORP.
                                  34 Passaic Street
                                  Wood Ridge, NJ 07075

                                  IMS PET INDUSTRIES, INC.
                                  34 Passaic Street
                                  Wood Ridge, NJ 07075


Note: The Case Information Statement is available at www.njcourts.com Revised 09/01/2010, CN
    10792-English (Appendix XII-A)

2



Michael J. Epstein, Esq. – 034101996
**THE EPSTEIN LAW FIRM, P.A.**
340 West Passaic Street
Rochelle Park, New Jersey 07662
(201) 845-5962
Attorneys for Plaintiff

Bruce Nagel, Esq. - 025931977
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, NJ  07068
(973)618-0400
Attorneys for Plaintiff

| | |
|---|---|
| MARIE DOPICO, for plaintiff and the class of members defined herein,<br><br>Plaintiff,<br><br>v.<br><br>IMS TRADING CORP., IMS PET INDUSTRIES, INC., and JOHN DOE CORPS. 1-10 (names fictitious as presently unknown),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – MIDDLESEX COUNTY DOCKET NO. MID-L- 269-14<br><br>Civil Action<br><br>** |

## COMPLAINT – CLASS ACTION MATTERS RELEVANT TO MULTIPLE CLAIMS

### INTRODUCTION

1.     This is a class action brought by plaintiff, on behalf of all consumers who purchased certain dog treats manufactured, marketed, distributed, or sold by defendants. Defendants misrepresented the dog treats as safe and healthy, but same were not as advertised, and did not conform to applicable express warranties.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction as alleged below, both plaintiff and defendants are located in New Jersey.

3.     Personal jurisdiction over each defendant is proper because each: (a) Does and has done business in New Jersey and within this district, with the claims asserted herein arising from such business;  and  (b)  Committed tortious acts that are the subject of the complaint in New

Jersey and within this district.

4.    Venue in this district is proper for the same reasons.

## PARTIES

5.    Plaintiff Marie Dopico is an individual who resides in New Jersey.

6.    Defendant IMS Trading Corp. ("Defendants'") is a corporation chartered under New Jersey law. Its address for service of process and Headquarters is 34 Passaic Street, Wood Ridge, New Jersey 07075.

7.    Defendant, IMS Pet Industries, Inc., is a corporation chartered under New Jersey law. Its address for service of process and Headquarters is 34 Passaic Street, Wood Ridge, New Jersey 07075.

8.    Defendants are engaged in New Jersey and nationwide in the business of manufacturing, producing, marketing, distributing, advertising, and/or selling dog treats, including the Chinese-made duck jerky dog treats at issue in this litigation.

9.    Defendants have spent significant sums of money in promoting trust and confidence among consumers in their pet food products. They hold themselves out to the public as manufacturers of safe, nutritious, and high-quality pet food.

10.    John Doe Corps. 1-10 (names fictitious as presently unknown) are other entities involved in the manufacture, sale, distribution, and marketing of the dog treats.

## FACTS
### In general

11.    Defendants manufactured dog treats made, in whole or in part, of duck jerky.

12.    The packaging of the dog treats is depicted by Exhibit A.

13.    Defendants made several representations on the packaging, as follows:

    A.    No artificial colors;

    B.    No artificial additives;

    C.    No artificial fillers;

    D.    No by-products;

    E.    The ingredients were duck breast filets, vegetable glycerin, soy protein,

2

isolate, salt;

    F.     "Healthy and natural treats with only the finest ingredients."

    G.    "We guarantee our product 100%!"

    H.    "Inspected and independently tested."

    I.     "A healthy natural treat for dogs."

14.    Defendants made representations under websites http://www.IMSpet.com as follows:

    A.    "That's why we go to great lengths to maintain the quality and consistency of our products."

    B.    "Offer the best treats for your pet."

15.    Packaging for other dog treats marketed under defendants' brand provide similar statements regarding wholesomeness and suitability, as are found on Exhibit A.

16.    Many, if not all, of these representations, found on the packaging represented by Exhibit A, were false.

17.    The products containing duck jerky that were sold under defendants' brand were not wholesome, or nutritious; in fact, they were unhealthy and dangerous to the health of plaintiffs' pets.

18.    The FDA had issued warnings, as recently as November 18, 2011, about dog illnesses after consuming duck jerky dog treats, which were made in China

19.    Defendants' packaging did not warn of any danger from feeding its contents to dogs.

20.    There is a reference to the FDA warnings in the "frequently asked questions" on the defendants' web site, but a purchaser will not see it unless they access the web site and click

3

through the questions. Furthermore, the warning is downplayed.

21.    Defendants marketed their products without first determining that the products are safe, and that they will not have a deleterious effect on dogs.

22.    Defendants marketed duck jerky dog treats without first determining that the products were safe, and that the dog treats would not have a deleterious effect on dogs.

23.    Defendants' duck jerky products, per the labels found on Exhibit A, are "Made In China." On information and belief, the products are made in the People's Republic of China.

24.    Upon information and belief, prior to October 2013, defendants had received numerous complaints regarding dog treats containing duck jerky imported from China, which caused dogs to become sick or die.

25.    Numerous complaints were made on the internet concerning defendants' duck jerky treats sickening or killing dogs.

26.    Defendants placed no warnings concerning their products on their packaging.

27.    Defendants knew that there was a substantial risk of death or harm associated with their dog treats.

28.    No reasonable person would feed dog treats to their dogs knowing that there was a substantial risk of death or illness from doing so. Plaintiff, and other consumers, did not learn of the FDA warning, until after their dogs had consumed the treated and either became ill or passed away.

29.    Defendants intentionally concealed known facts concerning the safety of their dog treats in order to increase or maintain sales.

30.    The fact that the dog treats might cause serious illness or death either at the recommended level, or at some larger level, was and is a material fact to pet owners. Most pet

4

owners (if not all of them) would not want to feed their pet such a treat, or have such a treat in a location where an animal might obtain more than the recommended number of servings.

31.     Dog owners consider their pets to be members of the family, and become very distressed when their dogs pass away, or become seriously ill.

32.     The conduct of defendants recklessly or maliciously disregarded the rights of plaintiff and the class members, for motives of pecuniary gain.

*Marie Dopico*

33.     In about October 2013, plaintiff purchased a package of defendants' Cadet duck jerky dog treats from a Shop Rite store in New Jersey.

34.     Plaintiff owns several small dogs.  In or about October 2013, plaintiff's dogs were in good health.

35.     In October 2013, plaintiff fed her dogs defendants' Cadet duck jerky treats.  There were no other material changes in their diets.

36.     Shortly after ingesting defendants' product, plaintiff's dogs became violently ill and plaintiff had to take immediate and drastic measures to save her dogs from dying.

37.     Plaintiff gave notice of her claim to defendants.

38.     Plaintiff suffered economic damages as a result of defendants' conduct, including:

   A.     Veterinary expenses and other costs incurred in treating the dog and attempting to save their lives;

   B.     The cost of defendants' product;

39.     Consumers in New Jersey and across the United States suffered damages similar to those suffered by plaintiff as a result of defendants' conduct.

## CLASS ALLEGATIONS

40.     The class consists of all persons in the United States (except Louisiana and Puerto Rico) who purchased any dog treat product containing duck jerky manufactured or sold by defendants and containing duck imported from China, on or after a date six years prior to the filing of this action.

41.     The subclass consists of class members whose dogs suffered harm or death due to the consumption of defendants' products.

42.     The members of the class and subclass are so numerous that joinder of all members is impracticable. Thousands of persons purchased the dog treats at issue, and numerous dogs died or became ill as a result.

43.     There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members. The predominant common questions include:

> A.     Whether the products sold by defendants were contaminated;
>
> B.     Whether defendants failed to properly test the products prior to market entry (or at any other relevant time);
>
> C.     Whether defendants failed to warn of the dangers of their products;
>
> D.     Whether defendants breached express warranties;
>
> E.     Whether defendants knew or should have known that the duck jerky treats were defectively manufactured, marketed, and/or distributed.
>
> F.     Whether defendants knowingly concealed the defective and/or harmful nature of their products;
>
> G.     Whether defendants misrepresented the nature of their products;
>
> H.     Whether, by the misconduct set forth above, defendants violated the consumer fraud protection statutes and/or false advertising statutes;

6

    I.  Whether defendants were unjustly enriched;

    J.  The nature and extent of damages and other remedies the class members are entitled to as a result of defendants' conduct.

  44.  Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

  45.  Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer class action litigation.

  46.  A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

**COUNT I – BREACH OF EXPRESS WARRANTY;**
**UNIFORM COMMERCIAL CODE**

  47.  Plaintiff incorporates paragraphs 1-46.

  48.  Under UCC §2-313, in force throughout the United States except Louisiana and Puerto Rico, the representations on defendants' packaging created an express warranty that the contents shall conform to the representations. N.J.S.A. 12A:2-313.

  49.  Defendants' representations became a part of the basis of the bargain.

  50.  Defendants breached those representations, as described above.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class, and against defendants, for:

    A.  Compensatory damages;

    B.  Attorney's fees, litigation expenses, and costs or suit; and

    C.  Such other or further relief as the Court deems proper.

**COUNT II – VIOLATIONS OF CONSUMER FRAUD ACT**

  51.  Plaintiff incorporates paragraphs 1-50.

7

52. Defendants engaged in unfair and deceptive acts and practices, in violation of the Consumer Fraud Act N.J.S.A. 56:8-1 *et seq*.

53. The statutes were violated by defendants as they:

    A. Represented that the treats were healthy and wholesome when they were not (Whether on the packaging, on the internet, or otherwise);

    B. Sold dog treats with such representations without properly testing the products to determine if they conformed to the representations;

    C. Continued to sell dog treats after defendants knew or should have known that the representations being made about them were false; and

    D. Either failed to warn of the dangers of their products, or concealed such dangers, or both.

54. The unfair and deceptive actions of defendants were done in the course of retail business, trade, and commerce. Further, a deleterious impact on the public interest (specifically, the public's interest in ensuring that its pet food supply is safe for consumption) was caused by defendants' conduct.

55. Plaintiffs have suffered ascertainable losses in the form of the illnesses and deaths suffered by consumers' pets. In addition, the products had no value if it is unwholesome and unfit for consumption by animals, were suffered by consumers as a result of defendants' actions.

56. The actions of defendants were taken willfully, knowingly, or in reckless disregard of the interests of consumers, thereby justifying the award of treble damages under the Consumer Fraud Act. Specifically, defendants either deliberately concealed, or were willfully blind to, facts relevant to the question of whether its dog treats were wholesome, healthy and fit for consumption. Notwithstanding that, defendants represented that defendants' Cadet duck jerky dog treats were wholesome, when they were not, with the intent of having consumers rely upon that false representation and purchase defendants'

8

Cadet products, to defendants' benefit. Such behavior is unfair, fraudulent, and unconscionable.

57. Plaintiffs repeat the class action allegations as if restated herein.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class, and against defendants, providing relief allowed by N.J.S.A. 58:8-19 and any other state law, as follows:

    A. An award to each class member of actual damages;

    B. Treble damages;

    C. Attorney's fees, litigation expenses and costs; and

    D. Such other or further relief as the Court deems proper.

## COUNT III – UNJUST ENRICHMENT

58. Plaintiff incorporates paragraphs 1-57.

59. Defendants obtained a benefit, to which they were not entitled, through the sale of substandard dog treats for the purchase price thereof.

60. Defendants had knowledge of the benefit conferred upon them by plaintiff and others like plaintiff. Defendants made a calculated profit from the sales of the dog treats, while plaintiff and others like plaintiff suffered damages as a result of the transactions.

61. Defendants have voluntarily and deliberately accepted and retained those profits and benefits, without delivering safe and healthy dog treats.

62. Defendants' retention of the money they obtained (from plaintiff and others like plaintiff) from the sale of defective dog treats constitutes unjust enrichment.

63. Plaintiffs repeat the class action allegations as if restated herein.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class, and against defendants, for:

    A. Compensatory damages;

9

B. Attorney's fees, litigation expenses and costs; and

C. Such other or further relief as the Court deems proper.

## COUNT IV – STRICT PRODUCTS LIABILITY;
## DEFECTIVE DESIGN OR MANUFACTURE

64.     Plaintiff incorporates paragraphs 1-63.

65.     Plaintiff and the class members purchased dog treats, which were manufactured, distributed or sold by defendants.

66.     The dog treats were defective and inherently and unreasonably dangerous and unsafe for their intended use because they caused injury, illness or death to the dogs of plaintiff and others like plaintiff.

67.     The dog treats failed to perform in the manner reasonably to be expected, in light of their nature and intended function.

68.     As a direct and proximate cause of the unreasonably dangerous condition of the dog treats, plaintiff and others like them suffered property damage and economic loss.

69.     Plaintiffs repeat the class action allegations as if restated herein.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class, and against defendants, for:

A. Compensatory damages;

B. Punitive damages;

C. Attorney's fees, litigation expenses and costs; and

D. Such other or further relief as the Court deems proper.

## COUNT V – STRICT PRODUCTS LIABILITY; FAILURE TO WARN

70.     Plaintiff incorporates paragraphs 1-69.

71.     Plaintiff, and others, purchased dog treats, which were manufactured, distributed or sold by defendants.

72.     Defendants' product was under the exclusive control of defendants, and was sold without adequate warnings regarding the health risks of the product.

73.     Defendants had a duty to warn purchasers of the health risks posed by their product in an effective manner.  Such warnings should have been placed on the packaging and at the point of sale, or should have otherwise been placed in a way calculated to give reasonable fair warning to consumers.

74.     As a direct and proximate cause of the defendants' failure to warn of the health risks of the dog treats, plaintiff, and others, suffered property damage and economic loss.

75.     Plaintiffs repeat the class action allegations as if restated herein.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    A.  Compensatory damages;

    B.  Punitive damages;

    C.  Attorney's fees, litigation expenses and costs; and

    D.  Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury.

11

## CERTIFICATION

I hereby certify that, pursuant to Rule 4:5-1: (1) the within matter in controversy is not the subject of any other action pending in any other court or arbitration; (2) no other action or arbitration proceeding is contemplated; and (3) no other necessary party to be joined in the subject litigation is presently known.

THE EPSTEIN LAW FIRM, P.A.

By: _____
    MICHAEL J. EPSTEIN

NAGEL RICE, LLP

By: _____
    BRUCE NAGEL

Dated: January 14, 2014

12

Appendix XII-B1

|  | **CIVIL CASE INFORMATION STATEMENT**<br>**(CIS)**<br>Use for initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>Pleading will be rejected for filing, under *Rule* 1:5-6(c),<br>if information above the black bar is not completed<br>or attorney's signature is not affixed | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|
| | | PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| | | CHG/CK NO. |
| | | AMOUNT: |
| | | OVERPAYMENT: |
| | | BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>Michael J. Epstein, Esq. | TELEPHONE NUMBER<br>(201) 845-5962 | COUNTY OF VENUE<br>Middlesex |
|---|---|---|
| FIRM NAME (if applicable)<br>The Epstein Law Firm, P.A. | | DOCKET NUMBER (when available) |
| OFFICE ADDRESS<br>340 West Passaic Street<br>Rochelle Park NJ 07662 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND  ☒ YES  ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Marie Dopico, Plaintiff | CAPTION<br>Dopico v. IMS Trading |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>508 | HURRICANE SANDY<br>RELATED?<br>☐ YES  ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☒ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW<br>REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING?<br>☐ YES  ☒ NO | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES  ☒ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)  ☐ NONE  ☒ UNKNOWN |

| THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE. |
|---|

| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION | | |
|---|---|---|
| DO PARTIES HAVE A CURRENT, PAST OR<br>RECURRENT RELATIONSHIP?<br>☐ Yes  ☒ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ☐ BUSINESS | |
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | | ☐ Yes  ☐ No |

| USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR<br>ACCELERATED DISPOSITION |
|---|
| |

| | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes  ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ Yes  ☒ No | IF YES, FOR WHAT LANGUAGE? |

| I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be<br>redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b). |
|---|
| ATTORNEY SIGNATURE: |

# Side 2

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
- 151 NAME CHANGE
- 175 FORFEITURE
- 302 TENANCY
- 399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502 BOOK ACCOUNT (debt collection matters only)
- 505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506 PIP COVERAGE
- 510 UM or UIM CLAIM (coverage issues only)
- 511 ACTION ON NEGOTIABLE INSTRUMENT
- 512 LEMON LAW
- 801 SUMMARY ACTION
- 802 OPEN PUBLIC RECORDS ACT (summary action)
- 999 OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
- 305 CONSTRUCTION
- 509 EMPLOYMENT (other than CEPA or LAD)
- 599 CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605 PERSONAL INJURY
- 610 AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621 UM or UIM CLAIM (includes bodily injury)
- 699 TORT – OTHER

**Track III - 450 days' discovery**
- 005 CIVIL RIGHTS
- 301 CONDEMNATION
- 602 ASSAULT AND BATTERY
- 604 MEDICAL MALPRACTICE
- 606 PRODUCT LIABILITY
- 607 PROFESSIONAL MALPRACTICE
- 608 TOXIC TORT
- 609 DEFAMATION
- 616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617 INVERSE CONDEMNATION
- 618 LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
- 156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303 MT. LAUREL
- 508 COMPLEX COMMERCIAL
- 513 COMPLEX CONSTRUCTION
- 514 INSURANCE FRAUD
- 620 FALSE CLAIMS ACT
- 701 ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**

| | | | |
|---|---|---|---|
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 288 | PRUDENTIAL TORT LITIGATION |
| 271 | ACCUTANE/ISOTRETINOIN | 289 | REGLAN |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 278 | ZOMETA/AREDIA | 291 | PELVIC MESH/GYNECARE |
| 279 | GADOLINIUM | 292 | PELVIC MESH/BARD |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 282 | FOSAMAX | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 284 | NUVARING | 296 | STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 601 | ASBESTOS |
| 287 | YAZ/YASMIN/OCELLA | 623 | PROPECIA |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category**   ☒ **Putative Class Action**   ☐ Title 59

Exhibit A





...for choosing Cadet. We are pet owners too and understand the importance of rewarding our dogs with healthy and natural treats made with only the finest ingredients. That's why we go to great lengths to maintain the quality and consistency of our products.

**We guarantee our product 100%!**

**INGREDIENTS:**
Duck, Vegetable Glycerin, Soy Protein Isolate, Salt.

**Inspected & Independently Tested**
Our products are tested to ensure they add to confirm their quality meets USDA & FDA guidelines.

**Contains NO**
NO Artificial Additives
NO Artificial Colors
NO Artificial Fillers
NO By-Products

**High in Protein**
Cadet® Duck Breast provides your dog with a high protein treat that is naturally low in fat.

Visit Us At: www.imspet.com
Product of China
Not For Human Consumption.
Distributed By:
IMS Pet Industries, Inc.,
34 Passaic Street,
Wood-Ridge, NJ 07075

02/24/2014 15:09 FAX 2016612493    INSURANCE    ☒003/036

**FEEDING RECOMM...**
Adult Dogs: Intended as a...
a meal replacement. Give
approximately 1-2 treats per
15 pounds of your dog's weight,
not to exceed 6-8 treats per day.
For smaller dogs break treat for
easier chewing. This treat is not
recommended for dogs under 5 lbs.

Remember, it's a good idea to supervise
your dog when giving him any treat or
chew... be sure to provide plenty
of fresh water. Wash hands with soap
and water after handling any dog treat





