UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIE DOPICO, *for Plaintiff and the class of Members defined herein* <br><br> Plaintiff, <br> v. <br><br> IMS TRADING CORP, *et al.*, <br><br> Defendants. | Civil No. 14-1874 (BRM)(DEA) <br><br> **OPINION** |

ARPERT, Magistrate Judge

This matter comes before the Court on a motion [ECF No. 52] by Plaintiffs for leave to file a Third Amended Complaint. Defendant has opposed the Motion. For the reasons set forth below, Plaintiffs' Motion is GRANTED.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs bring this putative class action against Defendant IMS Trading Corporation a/k/a IMS Pet Industries ("IMS" or "Defendant"), alleging that dog treats marketed and sold to pet owners by IMS caused illness and/or death to dogs that consumed the product. The matter was removed from the Superior Court of New Jersey in March 2014, after which Plaintiffs filed an Amended Complaint containing the following Counts: (a) Count I, breach of express warranty under the Uniform Commercial Code ("UCC"); (b) Count II, breach of implied warranty under the UCC; (c) Count III, violation of the New Jersey Consumer Fraud Act ("NJCFA"); (d) Count IV, violation of the Magnuson-Moss Warranty Act ("MMWA"); (e) Count V, unjust enrichment; (f) Count VI, failure to warn (products liability); and (g) Count VII, defective design or manufacture (products liability).

1

IMS moved to dismiss the Amended Complaint, and in April 2015, Judge Sheridan dismissed Counts II, III and V with prejudice as being subsumed by the New Jersey Products Liability Act, N.J.S.A. § 2A:58C, *et seq*. ("NJPLA"). In September 2015, Plaintiffs filed a Motion for leave to file a Second Amended Complaint ("SAC") [ECF No. 31] naming two additional class representatives, one a resident of New Jersey and the other a resident of Arizona. The proposed SAC included certain claims applicable to the Arizona Plaintiff only, which are as follows: (a) breach of implied warranty under the UCC (Count II); (b) violation of the NJCFA (Count III); (c) unjust enrichment (Count V); and (d) violation of the Arizona Consumer Fraud Act (Count VIII). Defendant opposed the motion on the ground that Judge Sheridan previously dismissed with prejudice the claims for breach of implied warranty, violation of the NJCFA, and unjust enrichment.

In February 2016, the Court issued an Order granting Plaintiffs' Motion, finding that a New Jersey Plaintiff, to whom New Jersey law applied, brought the claims which were previously dismissed by Judge Sheridan as being subsumed by the NJPLA. [ECF No. 34]. In contrast, the out-of-state Plaintiff named in the SAC alleged that he resided in Arizona, purchased Defendant's dog treats in Arizona, and, presumably, tended to his dog which allegedly became ill in Arizona, where he incurred over $200 in veterinary bills. Therefore, the Court found that, before the question of NJPLA subsumption is reached, it must first be established that the NJPLA applies to the Arizona Plaintiff's claims, *vis a vis* a choice of law analysis. Defendant subsequently filed an appeal with the District Judge, who affirmed the Order.

Now, Plaintiffs move for leave to file a Third Amended Complaint ("TAC"), in order to name an additional class representative, a resident of Oregon. [ECF No. 52]. Like the SAC, the proposed TAC includes certain claims applicable to the Oregon Plaintiff only, which are as

2

follows: (a) breach of implied warranty under the UCC (Count II); (b) violation of the NJCFA (Count III); (c) unjust enrichment (Count V); and (d) violation of the Oregon Unlawful Trade Practices Act ("UTPA") (Count IX). Defendant opposes the motion and, once again, argues that the TAC attempts to re-plead claims which were previously dismissed as subsumed by the NJPLA through Counts II, III, and V. Defendant also, for the first time, challenges Plaintiffs' claims under Counts I and IV as futile, contending that the challenged representations are inactionable under the applicable law. Finally, Defendant contests Count IX. Moreover, in July 2017, Defendant filed a Motion to Dismiss also challenging Plaintiffs' claims as alleged under Counts I and IV. [ECF No. 56]. That Motion is currently pending.

## II. ANALYSIS

### A. Standard of Review

As a threshold issue, Defendant argues that Plaintiffs must demonstrate good cause under Federal Rule of Civil Procedure 16(b)(4), because the instant Motion was untimely filed. Defendant's Opposition Brief ("Def.'s Opp'n."), at 12-17. In that connection, Defendant contends that good cause is lacking, because Plaintiffs had knowledge of the potential new Plaintiff and UTPA claim before August 30, 2016, *i.e.,* the Court imposed deadline for amending the pleadings.[1] *Id.*, at 13-15. However, this argument is without merit, as the circumstances under which Plaintiffs filed this Motion constitute good cause.

Although a motion to amend is generally governed by Rule 15(a), a party who moves to amend a pleading "after a scheduling order deadline has passed must also meet Rule 16's 'good

---

[1] Specifically, this Court issued a Scheduling Order in April 2016, stating, in relevant part: "[a]ny motion to amend the pleadings or join new parties, whether by amended or third-party complaint must be filed [by] August 30, 2016." [ECF No. 45]. Plaintiffs filed the instant Motion on June 23, 2017.

cause requirement.'" *Kuchinsky v. Pressler & Pressler, LLP*, No. 12-1903, 2014 U.S. Dist. LEXIS 58461, at *5 (D.N.J. April 28, 2014) (citing *Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005)). To demonstrate good cause pursuant to Rule 16, the moving party must show that, despite its diligence, the deadlines set forth in the scheduling order could not reasonably be met. *Venetec Inter., Inc. v. Nexus Med.*, LLC, 541 F.Supp.2d 612, 618 (D. Del. 2008). For this reason, a District Court may deny a Motion to amend for lack of good cause if the moving party had "knowledge of [a] potential claim before the deadline to amend[]" expired. *Stallings v. IBM Corp.*, No. 8-3121, 2009 U.S. Dist. LEXIS 81963, at *47 (D.N.J. Sept. 8, 2009) (citations omitted). On the other hand, a finding of good cause is appropriate under Rule 16 where a moving party provides a "sufficient explanation of its diligence." *Harbor Laundry Sales, Inc. v. Mayflowers Textile Serv. Co.*, No. 09-6269, 2011 U.S. Dist. LEXIS 144878, at *15 (D.N.J. Dec. 16, 2011).

In this case, Rule 16 does not serve as a basis for denying Plaintiffs' Motion. Defendant argues that, because "Plaintiffs have purportedly represented a national class of consumers. . . Plaintiffs [cannot] claim that the potential new plaintiff was completely unknown to Plaintiffs' counsel . . . ." Def.'s Opp'n., at 13. Yet the representation of a nation-wide class, which presumably comprises of numerous individuals, does not reasonably suggest that counsel is informed as to the identity of every class member. To the contrary, Plaintiffs could not have complied with this Court's deadline through the exercise of reasonable diligence. Indeed, Plaintiffs contend that they were contacted by the Oregon Plaintiff after the deadline passed, and subsequently moved to amend the SAC, to include a new class representative and claim under the UTPA.[2] Under these

---

2    The Court similarly rejects that Plaintiffs "were aware of the potential UTPA claim" prior to the filing of the proposed TAC." Def.'s Opp'n., at 15. Before naming a class-representative from Oregon, Plaintiffs were prohibited from asserting a claim under the UTPA. *Neale v. Volvo*

4

circumstances, therefore, Plaintiffs have satisfied their burden of demonstrating good cause under Rule 16. *See Sabatino v. Union Twp.*, No. 11-1656, 2013 U.S. Dist. LEXIS 54866, at *11-18 (D.N.J. April 15, 2013) (permitting the plaintiff to file an amended complaint naming additional parties, as the identities of those parties were not clear prior to the date upon which all proposed amendments were to be submitted).[3]

Having found good cause, the Court proceeds to examine Plaintiffs' proposed amendments under the liberal standard of Rule 15(a). Pursuant to Rule 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining*

---

*Cars of N. Am., LLC*, 794 F.3d 353, 364 (3d Cir. 2015) ("Named plaintiffs are the individuals who seek to invoke the court's jurisdiction and they are held accountable for satisfying jurisdiction. . . . Thus, a class action is permissible so long as at least one named plaintiff has standing.") (citations omitted).

[3] Defendant contends that including a class representative from Oregon will cause an undue burden, because "defense counsel would then be required to obtain discovery from a plaintiff (and her expert) residing approximately 3,000 miles away." Def.'s Opp'n., at 13. Despite this contention, Defendant also alleges that the UTPA claim is "predicated on the identical facts that support" the NJCFA claim. *Id.*, at 15. Therefore, Defendant's own allegations demonstrate that the proposed amendments require a limited amount of discovery and will, at worst, impose a minimal burden on Defendant. Moreover, because "technological advances . . . have significantly reduced" the difficulty in obtaining discovery from a geographically distant party, the denial of the instant Motion on this basis is inappropriate. *See Lomanno v. Black,* 285 F. Supp. 2d 637, 647 (3d Cir. 2003).

*& Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B. NJPLA Subsumption

Defendant reasserts an argument which was explicitly addressed and rejected in this Court's prior Order. [ECF No. 34.] Specifically, Defendant contends that the newly named Plaintiff, a resident of Oregon, "attempts to re-plead causes of action under New Jersey law that have already been dismissed" in Counts II, III, and V; respectively, the claims for breach of implied warranty, violation of the NJCFA, and unjust enrichment. Def.'s Opp'n., at 17. Defendant further contends that, despite this Court's prior holding, "this is the appropriate time to address these issues, as Plaintiffs have now opened the door to an examination of the Complaint through the filing of" the instant Motion. *Id.*, at 7. The Court disagrees, and declines to revisit an issue which has already been addressed.

As the Supreme Court has explained, the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Although this doctrine "does not restrict a court's power but rather governs its exercise of discretion," *id.* (quotations omitted), the Supreme Court has provided the following guidance:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.

*Id*. (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). Significantly, these principles have developed "to maintain consistency and avoid reconsideration of matters

6

once decided during the course of a single continuing lawsuit." *Id.* (quotations and citations omitted).

Here, Defendant previously opposed Plaintiffs' proposed SAC, through which Plaintiffs named an additional class representative from Arizona and claim under the Arizona Consumer Fraud Act. Defendant similarly argued that the NJPLA applied to the newly named representative, and, in that connection, subsumed his claims under Counts II, III, and V of the proposed SAC. However, in February 2016, the Court issued an Order, finding that the issue of subsumption could not be resolved until a choice of law analysis was conducted, in light of the proposed representative's previously stated connections to Arizona. Indeed, the NJPLA can only subsume claims that are governed by the laws of New Jersey.

Defendant raises an identical argument on this Motion as to the proposed Oregon Plaintiff, without demonstrating that New Jersey law governs her claims. Rather, Defendant "respectfully disagrees with the . . . determination that any analysis of subsumption under the [NJ]PLA requires a choice-of-law analysis" and provides a contrasting interpretation of the case law which this Court previously cited. Def.'s Opp'n., at 4-5. However, the instant Motion is an improper vehicle for raising these challenges—indeed, Defendant previously filed an appeal with the District Judge, who affirmed the prior Order. Moreover, Defendant has not identified any supervening law which merits reconsideration. Therefore, Defendant's arguments are rejected for the reasons already provided in this Court's previous Order.

### C. Plaintiffs' MMWA and New Jersey Warranty Claims

Defendant also contends that Plaintiffs' MMWA and warranty claims under New Jersey law are futile. Specifically, as to Plaintiffs' MMWA claim, Defendant advances the following three arguments: (a) the complained of representations on the packaging of the disputed treats fail to

7

satisfy the MMWA's threshold requirement of a written warranty; (b) even if the representations constitute written warranties, the MMWA is inapplicable, since they would be governed by separate federal law; and (c) the MMWA claim is entirely dependent on the success of Plaintiffs' warranty claims under state law, but those have already been dismissed from this litigation. Def.'s Opp'n., at 17-31. Similarly, Defendant argues that the express and implied state law warranty claims are futile, because the complained of representations constitute inactionable puffery or opinions. *Id.*, at 32-36. However, these arguments need not be resolved at this juncture of the litigation.

Currently, Plaintiffs solely move to name an additional class representative from Oregon, and assert a claim under its UTPA. Nevertheless, Defendant argues that the MMWA and state law warranty claims are futile, causes of action which Plaintiffs previously asserted by way of amendment to the Complaint. In that connection, Rule 15(a)'s futility standard serves as a basis for denial where a "*proposed amendment* is frivolous or advances a claim that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (quotations omitted) (emphasis added). Thus, because the Rule contemplates assessing the futility of a claim which has not already been asserted in an operative Complaint, the Court refrains from addressing Plaintiffs' MMWA and state law warranty claims on this Motion.

Rather, those challenges are more appropriately considered on Defendant's pending Motion to Dismiss. Indeed, it significantly overlaps with issues presented here by including the above stated arguments, to which Plaintiffs counter by referencing their Opposition to Defendant's Motion to Dismiss. Therefore, in an effort to avoid a duplicative expenditure of judicial resources, the Court will allow Plaintiffs' MMWA and warranty claims to proceed, subject to their consideration within the context of Defendant's Motion to Dismiss. *Travelers Cas. & Sur. Co. v.*

*Becton Dickinson & Co.*, No. 14-4410, 2017 U.S. Dist. LEXIS 9487, at *6 (D.N.J. Jan. 24, 2017) ("In the interests of judicial economy . . . the Court may decline to engage in a detailed futility analysis where the Court finds that these arguments are better suited for consideration in the context of a motion to dismiss."); *In re Aetna UCR Litig.*, No. 7-3541, 2015 U.S. Dist. LEXIS 84600, at *28 (D.N.J. June 30, 2015) (declining to engage in a futility analysis on a motion to amend, where the defendants "cross-moved to dismiss and made clear that all of the arguments apply with equal force."); *see also Strategic Envtl. Partners, LLC v. Bucco*, No. 13-5032, U.S. Dist. LEXIS 106170, at *8 (D.N.J. Aug. 1, 2014).

### D. Oregon UTPA

Finally, Defendant cites *Smith v. Deputy Orthopedics*, No. 11-4139, 2013 U.S. Dist. LEXIS 36776 (D.N.J. March 18, 2013), and argues that a choice of law analysis need not be conducted, to find that the NJPLA subsumes Plaintiff's UTPA claim. Def.'s Opp'n., at 36-39. Alternatively, under the applicable choice of law principles, Defendant argues that a conflict between the Oregon and New Jersey PLA does not exist, such that Plaintiff's UTPA claim would be subsumed by each state's respective statute. In that connection, Defendant relies on four Oregon cases "which unequivocally establish[]" that its PLA "subsumes all possible causes of action for harm caused by a defective product," among which include UTPA claims. *Id.*, at 38. However, the cases upon which Defendant relies are distinguishable.[4]

Pursuant to Oregon's PLA, a product liability civil action is defined as "a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal

---

[4] The cases cited by Defendant include: (a) *Philpott v. A.H. Robins Co.*, 710 F.2d 1422, 1424 (9th Cir. 1983); (b) *Phelps v. Wyeth, Inc.*, 857 F. Supp. 2d 1114, 1121 (D. Or. 2012); (c) *Crosswhite v. Jumpking, Inc.*, 411 F. Supp. 2d 1228, 1231 (D. Or. 2006); and (d) *Simonsen v. Ford Motor Co.*, 196 Ore. App. 460, 466 (2004).

9

injury, death or property damage arising out of: (1) Any design, inspection, testing, manufacturing or other defect in a product; (2) Any failure to warn regarding a product; or (3) Any failure to properly instruct in the use of a product." ORS 30.900. Notwithstanding this definition, the legislature "spent little time debating what was or was not a product liability civil action," and, as such, the question of "[w]hether a claim is based on a product defect or failure under ORS 30.900 is not always readily discernable." *Weston v. Camp's Lumber & Bldg. Supply, Inc.*, 205 Ore. App. 347, 356 (2006) (internal quotations omitted). Therefore, in determining whether a cause of action is "based on a product defect or failure under ORS 30.900," courts are to ascertain the "gravamen or predominant characteristic of the claim" through an analysis of the operative facts in the Complaint. *Id*.

Here, Defendant has failed to sufficiently demonstrate that a choice of law analysis is not required. In *Smith*, the plaintiff filed a products liability action after undergoing a total right knee replacement, asserting violations under New Jersey law and the Virginia Consumer Protection Act. *Smith*, 2013 U.S. Dist. LEXIS 36776, at *16-18. The court's lengthy analysis, there, mainly concerned whether the plaintiff's state law claims were preempted, because the knee implant was regulated by the Food and Drug Administration. After answering that question in the affirmative, it was briefly noted that the plaintiff's claims were also subsumed by the NJPLA, without reference to a choice of law analysis. However, that decision is distinguishable—it was decided within the context of a motion for summary judgment, presumably after discovery was complete, on a fully developed factual record. In contrast, this action is in its procedural infancy. The pleadings stage has yet to conclude and, in that connection, discovery remains to be taken, particularly with respect to the Oregon Plaintiff. Accordingly, denial of Plaintiff's UTPA claim on this basis would be improper. Indeed, various courts within this district have raised choice of law concerns at earlier

stages of litigation, before addressing the issue of NJPLA subsumption. *See Montich v. Miele USA, Inc.*, 849 F.Supp. 2d 439 (D.N.J. 2012); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691 (D.N.J. 2011).

Defendant additionally argues that the UTPA claim is subsumed under Oregon's PLA. However, Defendant's support is confined to a string cite of four parentheticals, comprised of cases which do not involve nor interpret a "product liability civil action" within the context of a UTPA claim. As such, they fail to establish that Plaintiff's UTPA claim is automatically subsumed under Oregon law, particularly since the scope of "OS 30.900" is "subject to some debate," and various courts have treated UTPA claims and product liability claims as independent causes of action under the law. *Weston*, 205 Ore. App. at 356 (finding that the plaintiff's UTPA claim was not a product liability civil action); *see also Teater v. Pfizer, Inc.*, No. 5-604, 2012 U.S. Dist. LEXIS 122847, at *1-3 (D. Or. 2012) (adopting the Magistrate Judge's Report and Recommendation, finding that the plaintiff sufficiently pled her product liability claims, and allowing her to file an amended complaint to also include a claim under Oregon's UTPA). In light of these considerations, Defendant, at this juncture of litigation, has failed to meet its heavy burden of demonstrating that Plaintiff's UTPA claim is "clearly futile." *Vanderhoof-Forschner v. Vanderhoof*, No. 11-1309, 2012 U.S. Dist. LEXIS 95137, at *26 (D.N.J. July 9, 2012). Accordingly, it may proceed.

**III. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for leave to file the TAC is GRANTED. Plaintiffs shall file the TAC within 7 days hereof. Defendant's Motion to Dismiss will be administratively terminated without prejudice to refiling in response to the TAC. An appropriate Order accompanies this Opinion.

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge