UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| MARIE DOPICO, *for Plaintiff and the class of members defined herein*, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> IMS TRADING CORP., *et al.*, <br><br> Defendants. | Civil Action No. 3:14-cv-1874-BRM-DEA <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants IMS Trading Corporation a/k/a IMS Pet Industries[1] (collectively "Defendants") Motion to Dismiss (ECF No. 70-1). Plaintiffs Marie Dopico, John Banks, Calvin Locke, and Carly Heron, for plaintiffs and the class of members (collectively "Plaintiffs"), oppose the Motion. (ECF No. 72.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **DENIED in part** and **GRANTED in part**.

**I.    BACKGROUND**

   **A.  Factual Background**

Defendants are engaged in the "business of manufacturing, producing, marketing, distributing, advertising, and/or selling dog treats, including the Chinese-made duck jerky dog treats at issue in this litigation." (Compl. (ECF No. 68) ¶ 12.) Plaintiffs are purchasers of the duck

---

[1] IMS Pet Industries is improperly captioned as IMS Pet Industries, Inc.

jerky dog treats, who allege their dogs became ill after ingesting Defendants' product. (*See* ECF No. 68.)

Defendants made several representations on the packaging of the dog treats they manufactured, including:

> A. No artificial colors;
> B. No artificial additives;
> C. No artificial fillers;
> D. No by-products;
> E. The ingredients were duck breast filets, vegetable glycerin, soy protein, isolate, salt;
> F. "Healthy and natural treats with only the finest ingredients."
> G. "We guarantee our product 100%!"
> H. "Inspected and independently tested."
> I. "A healthy natural treat for dogs."

(*Id.* ¶ 17.) Defendants also made two representations regarding the treats on their website: (1) "That's why we go to great lengths to maintain the quality and consistency of our products;" and (2) "Offer the best treats for your pet." (*Id.* ¶ 18.)

Plaintiffs contend the representations found on the packaging were false. (*Id.* ¶ 20.) The FDA allegedly "issued warnings, as early as 2007 and as recently as November 18, 2011, about dog illnesses after consuming duck jerky dog treats, which were made in China." (*Id.* ¶ 22.) However, Defendants' packaging did not warn purchasers of the danger and side effects of the treats. (*Id.* ¶¶ 23, 30.) Plaintiffs also contend that prior to October 2013, Defendants had received complaints regarding their dog treats stating their product has caused dogs to become ill or die. (*Id.* ¶ 28.)

**B. Procedural History**

Plaintiff Dopico commenced this class action in the Superior Court of New Jersey, Law Division, Middlesex Count in January 2014. (Ex. A. to ECF No. 1.) The matter was removed on March 20, 2014, and on April 17, 2014, Dopico filed a First Amended Complaint alleging: (1) Count I, breach of express warranty under the Uniform Commercial Code ("UCC"); (2) Count II, breach of implied warranty under the UCC; (3) Count III, violation of the New Jersey Consumer Fraud Act ("NJCFA"); (4) Count, IV violation of the Magnuson-Moss Warranty Act ("MMWA"); (5) Count V, unjust enrichment; (6) Count VI, failure to warn (products liability); and (7) Count VII, defective design or manufacture (products liability). (ECF Nos. 1, 9.) On May 7, 2014, IMS moved to dismiss the Amended Complaint, and on April 20, 2015, Judge Peter G. Sheridan, U.S.D.N.J, who has since then assumed senior status. dismissed Counts II, III, and V with prejudice as being subsumed by the New Jersey Products Liability Act ("NJPLA"). (ECF No. 20.)

On September 18, 2015, Dopico filed a Motion to Amend the First Amended Complaint, naming two additional class representatives, one a resident of New Jersey, Banks, and the other a resident of Arizona, Locke. (ECF No. 31.) The proposed Second Amended Complaint included claims applicable to the Arizona plaintiff. (*Id.*) On February 1, 2016, the Court granted Plaintiffs' Motion to Amend, and on February 2, 2016, Plaintiffs filed their Second Amended Complaint. (ECF Nos. 34, 35.) On February 16, 2016, Defendants filed an Answer to the Second Amended Complaint. (ECF No. 37.)

On June 23, 2017, Plaintiffs filed another Motion to Amend the Second Amended Complaint. (ECF No. 52.) On June 28, 2017, Defendants requested an extension of time to file an opposition to Plaintiff's Motion for Leave to file a Third Amended Complaint and "permission to file a dispositive motion with respect to all breach of warranty claims set forth in Plaintiffs'

Complaint." (ECF No. 53.) On June 30, 2017, the Court considered Plaintiffs' letter and granted all requests. (ECF No. 54.) On July 24, 2017, Defendants filed a Motion to Dismiss Plaintiffs Second Amended Complaint. (ECF No. 56.) On January 30, 2018, the Court granted Plaintiffs' Motion to Amend the Second Amended Complaint and administratively terminated without prejudice Defendants' Motion to Dismiss. (ECF No. 67.) Plaintiffs filed the Third Amended Complaint on January 30, 2018. (ECF No. 68.) On February 13, 2018, Defendants filed this Motion to Dismiss Counts I and IV of Plaintiffs' Third Amended Complaint. (ECF No. 70.) Plaintiffs oppose the Motion. (ECF No. 72.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d at 287. Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

### III. DECISION

#### A. Whether Defendants' Motion is Procedurally Barred

Plaintiffs argue Defendants' Motion to Dismiss is procedurally deficient because it seeks dismissal after Defendants have already filed their Answer to Count I and Count IV to both the First Amended Complaint and the Second Amended Complaint. (ECF No. 72 at 7.) Defendants

contend the Court granted Defendants permission to file a Motion to Dismiss as to all warranty claims set forth in the Third Amended Complaint. (ECF No. 73 at 1-2.) Defendants are correct.

On February 2, 2016, Plaintiffs filed their Second Amended Complaint. (ECF No. 35.) On February 16, 2016, Defendants filed an Answer to the Second Amended Complaint. (ECF No. 37.) On June 23, 2017, Plaintiffs filed another Motion to Amend the Second Amended Complaint. (ECF No. 52.) On June 28, 2017, Defendants requested an extension of time to file an opposition to Plaintiff's Motion for Leave to file a Third Amended Complaint and "permission to file a dispositive motion with respect to all breach of warranty claims set forth in Plaintiffs' Complaint." (ECF No. 53.) On June 30, 2017, the Court considered Defendants' letter and granted its request to file a dispositive motion with respect to all warranty claims. (ECF No. 54.) Defendants are in compliance with the Order as their Motion only seeks to dismiss two warranty claims. Accordingly, Plaintiffs' argument that Defendants' Motion is procedurally barred is misguided.

### B. Breach of Express Warranty (Count I)

Defendants argue Plaintiffs' breach of express warranty claim is "unsustainable" because the "representations" identified in the Third Amended Complaint "do not amount to express warranties under New Jersey law." (ECF No. 70-1 at 18.) Specifically, they contend the representations are "affirmation[s] merely of the value of the goods or [] statement[s] purporting to be merely the seller's opinion or commendation of the goods." (*Id.* at 19 (quoting N.J. Stat. Ann. § 12A:2-313).) Plaintiffs contend the Third Amended Complaint sets forth specific representations which constitute warranties, including statements that the dog treats were "healthy," "natural," "guarantee[d]," "inspected," "tested," and contained "no artificial additives." (ECF No. 72 at 11.) Plaintiffs allege these representations constitute "affirmations of fact rather than opinions or amorphous boasts regarding quality." (*Id.* at 12.)

6

New Jersey's Statute Annotated § 12A:2-313, which is analogous to U.C.C. § 2-313, provides:

> (1) Express warranties by the seller are created as follows:
>
> > (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> >
> > (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description
> >
> > (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Pursuant to New Jersey law, a plaintiff must allege the following to state a claim for breach of express warranty: "(1) that Defendant made an affirmation, promise or description [of] the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (internal citations omitted). "A statement can amount to a warranty, even if unintended to be such by the seller, if it could fairly be understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance." *Avram v. Samsung Elecs. Am., Inc.*, 11-6973, 2013 WL 3654090, at *8 (D.N.J. July 11, 2013) (citations omitted). However,

7

affirmations "merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Snyder*, 792 F. Supp. 2d at 721 (quoting N.J. Stat. Ann. § 12A:2-313(2)). Moreover, mere puffery is "not considered specific enough to create an express warranty." *Id.* "While the alleged warranties may later be found to be no more than 'puffery,' except in clear cases, this is normally a question of fact for the jury." *Id.* at 723; *see In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08–939, 2009 WL 2940081, at *16 (D.N.J. Sept. 10, 2009) (dismissing a breach of warranty claim based on Defendant's statement that HD DVD Players were for "Today, Tomorrow, and Beyond," since the statement is just "puffery").

Typically, "courts have noted that 'whether a given statement constitutes an express warranty is normally a question of fact for the jury.'" *Id.* (quoting *In re Ford Motor Co. E–350 Van Prods. Liab. Litig.*, No. 03–4558, 2008 WL 4126264, at *4 (D.N.J. Sept. 3, 2008)).

The Court finds Plaintiffs have adequately alleged a breach of express warranty claim as to labeling on the dog treats, but not as to the representations on the website. Here, Plaintiffs contend the following phrases on Defendants duck jerky dog treats label constitute express warranties that formed the basis of the bargain between Plaintiffs and Defendants:

> A. No artificial colors;
> B. No artificial additives;
> C. No artificial fillers;
> D. No by-products;
> E. The ingredients were duck breast filets, vegetable glycerin, soy protein, isolate, salt;
> F. "Healthy and natural treats with only the finest ingredients."
> G. "We guarantee our product 100%!"
> H. "Inspected and independently tested."
> I. "A healthy natural treat for dogs."

(ECF No. 68 ¶ 17.) They also allege Defendants made two express warranties on their website: (1) "That's why we go to great lengths to maintain the quality and consistency of our products" and (2) "Offer the best treats for your pet." (*Id.* ¶ 18.) Defendants only contest that the label on the dog treats did not make an "affirmation, promise or description [of] the product." (ECF No. 70-1 at 180-21.) They contend that the above representations are either puffery or "affirmation[s] merely of the value of the goods or [] statement[s] purporting to be merely the seller's opinion or commendation of the goods." (ECF No. 70-1 at 19.) As such, the Court will only address this element.

When analyzing the packaging label as a whole "it could fairly be understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance." *Avram*, 2013 WL 3654090, at *8. The phrase "We guarantee our product 100%" coupled with "Inspected and independently tested" could be "fairly" understood to mean the product was tested and contained: (1) "No artificial colors"; (2) "No artificial additives"; (3) "No artificial fillers"; (4) "No by-products"; and (5) that "the ingredients were duck breast filets, vegetable glycerin, soy protein, isolate, salt." *See Snyder*, 792 F. Supp. 2d at 722 (holding "Plaintiffs have pointed to specific affirmations or promises by Defendants regarding the safety of the use of their Products on pets, and therefore their breach of warranty claim survives a motion to dismiss"); *see also Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 240 (D.N.J. 2008) (finding packaging statements regarding fat and calories per serving crated express warranties). "[W]hether a given statement constitutes an express warranty is normally a question of fact for the jury." *Stewart v. Smart Balance, Inc.*, No. 11-6174, 2012 WL 4168584, at *12 (D.N.J. June 26, 2012) (finding that "[t]he question of whether the labeling as a whole is misleading to an average consumer is a question of fact, and is not appropriate basis for dismissal

9

at this time"). Accordingly, Defendants' Motion to Dismiss the breach of warranty claim as to the labeling of the dog treats is **DENIED**

However, the Court finds Defendants' website statements do not amount to express warranties. The website statements are more akin to puffery and "affirmation[s] merely of the value of the goods or [] statement[s] purporting to be merely the seller's opinion or commendation of the goods." N.J. Stat. Ann. § 12A:2-313. Courts have established that words such as "great" and "best" are mere puffery. *See Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) (dismissing a claim based on Defendant's statement that its product provided "superior engine protection," since that statement is just "puffery"); *Wojcik v. Borough of Manville*, No. A-1627-08T3, 2010 WL 322893, at *3 (N.J. Super. Ct. App. Div. Jan. 29, 2010) (holding "[s]tatements that the helmet was 'top rated' and a 'top seller' are not express warranties but are statements of value or commendations" and "[s]tatements that the helmet was 'one of the best' and 'great' are opinions, and therefore, not express warranties"). Both words were used in the phrases quoted from Defendants' website. Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim that Defendants' website contains express warranties that were breached is **GRANTED**.

### C. MMWA (Count IV)

Defendants argue "this case is utterly bereft of any legal or factual foundation" of MMWA warranty claims for three reasons: (1) the MMWA is inapplicable to written warranties that are governed by federal law; (2) the warranty claims are mere product descriptions and do not constitute written warranties under the MMWA; and (3) any MMWA implied warranty claims cannot be maintained by any of the New Jersey Plaintiffs because they are linked to a state law implied warranty claim that has already been dismissed by this Court. (*See* ECF No. 70-1 at 6-17.) Plaintiffs contend the warranty claims at issue are adequately plead and not governed by federal

law, and if they are governed by federal law, they should be determined on summary judgment. (ECF No. 72 at 16-22.)

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). However, the MMWA is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law. If only a portion of a written warranty is so governed by Federal law, the remaining portion shall be subject to this chapter." 15 U.S.C. 2311(d).

In this case, the Federal Food, Drug, and Cosmetic Act ("FDCA") and Food and Drug Administration ("FDA") governs the Chinese-made duck jerky dog treats labeling on Defendants' product. In 1938, Congress passed the FDCA, which gives the FDA power to ensure "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A); *Fellner v. Tri–Union Seafoods, LLC*, 539 F.3d 237, 251 (3d Cir. 2008) ("The FDCA grants the FDA authority to regulate the field of food safety."). The FDCA defines "food" as "articles used for food or drink for man or other animals." 21 U.S.C.A. § 321. Indeed, the Code of Federal Regulations contains a subsection dedicated to "Animal Food Labeling." 21 C.F.R. § 501.1, *et seq.* This subsection is compromised of numerous FDA regulations governing the packaging of animal food, including regulations such as: (1) the display panel of package form animal food (§ 501.1); (2) information panel of package for animal food (§ 501.2); (3) identity labeling of animal food in package form (§ 501.3); (4) designation of ingredients (§ 501.4); (5) name and place of business of manufacturer, packer, or distributor (§ 501.5); (6) labeling of animal food with number of servings (§ 501.6); (7)

prominence of required statements (§ 501.8); (8) labeling warning statements (§ 501.17); and (9) misbranding of animal food (§ 501.18).

In addition, the FDA has explicitly stated on its public governmental website that it "regulates that can of cat food, bag of dog food, or box of dog treats or snacks in your pantry". U.S. Food & Drug Administration, Pet Food, https://www.fda.gov/animalveterinary/products/animalfoodfeeds/petfood/default.htm. The FFDCA "requires that all animal foods, like human foods, be safe to eat, produced under sanitary conditions, contain no harmful substances, and be truthfully labeled." *Id.*

Lastly, Plaintiffs' Third Amended Complaint acknowledges the FDA regulates dog treats. (*See* ECF No. 68 ¶ 22) ("The FDA had issued warning, as early as 2007 and as recently as November 18, 2011, about dog illnesses after consuming duck jerky dog treats, which were made in China.").) As such, the MMWA is inapplicable to any alleged express or implied warranty claims on the labeling of the dog treats. See *Stewart*, 2012 WL 4168584, at *14 (finding "[t]o the extent that 'fat free' is the equivalent of 'defect free,' despite the fact that compliant milk may contain no less than 0.5 grams of fat, the making or content of the claim is governed by Federal law"); *Reid v. GMC Skin Care USA Inc.*, No. 15-277, 2016 WL 403497, at *13 (N.D.N.Y. Jan. 15, 2016) ("The majority of courts that have considered whether § 2311(d) bars an MMWA claim founded on the labels of products governed by the FDCA have concluded that MMWA claim is barred."); *Jasper v. MusclePharm Corp.*, No. 14–02881, 2015 WL 2375945, at *5–6 (D. Colo. April 9, 2015) (finding that because dietary supplement product labels containing allegedly misleading claims about the supplement's attributes or effects were governed by the FDCA, § 2311(d) barred the plaintiff's MMWA claim), *recommendation adopted*, 2015 WL 2375945 (D.

Colo. May 15, 2015).[2] Defendants' Motion to Dismiss Count IV of Plaintiffs' Third Amended Complaint pertaining to the labeling of the dog treats is **GRANTED**.

Plaintiffs argue Defendants website warranty claims are unaffected by 15 U.S.C. 2311(d) because websites are not regulated by the FDA or FDCA. (ECF No. 72 at 22.) This argument is immaterial. "Claims under the MMWA depend upon the disposition of the underlying state law warranty claims." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016); *see Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011) ("A claim under the MMWA relies on the underlying state law claim.") Therefore, "if there exists no actionable warranty claim, there can be no violation of the MMWA." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d at 600; *In re: Ford Motor Co. Ignition Switch Prods. Liability Litig.*, No. 96–1814, 2001 WL 1266317, at *24 (D.N.J. Sept. 30, 1997) (dismissing MMWA claims against defendant because all express and implied warranty claims against defendant had been dismissed). The Court has dismissed Plaintiffs' New Jersey state law express warranty claim above as to the website. Therefore, Defendants' Motion to Dismiss Plaintiffs' MMWA express warranty claim is also **DISMISSED** as to that claim. Plaintiffs' implied warranty claim pertaining to the website is also **DISMISSED** as to the New Jersey Plaintiffs because they are inextricably linked to state law implied warranty claims that have already been dismissed by this Court.[3] All implied warranty

---

[2] While many courts have dismissed MMWA claims on a motion to dismiss, the Southern District of California has denied a defendant's motion to dismiss, explaining that the issue of "[w]hether § 2311(d) precludes Plaintiff's MMWA claim is better suited for a motion for summary judgment, when the record is more fully developed and the parties further analyze the statutory scheme under the facts of the case." *Kanfer v. Pharmacare US, Inc.*, No. 15–0120, 2015 WL 6742201, at *10 (S.D. Cal. Nov. 4, 2015). This Court will follow the with the majority and *Stewart*, a previous New Jersey District Court case.

[3] Defendants' Motion to Dismiss only seeks to dismiss Plaintiffs' implied warranty claims under the MMWA as to all New Jersey Plaintiffs. (ECF No. 70-1 at 16.) Plaintiffs concede Judge

claims as to out-of-state residents will proceed. Accordingly, Defendants' Motion to Dismiss Count IV of the Third Amended Complaint is **GRANTED** as to all express warranties. It is also **GRANTED** as to New Jersey Plaintiffs' implied warranty claims.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Defendants' Motion to Dismiss the breach of warranty claim (Count I) as to the labeling of the dog treats is **DENIED** but **GRANTED** as to Plaintiffs claim that Defendants' website contains express warranties that were breached. Defendants' Motion to Dismiss the MMWA claim (Count IV) as it pertains to the labeling of the dog treats is **GRANTED**. Plaintiffs' implied warranty MMWA claim pertaining to the website is only **DISMISSED** as to the New Jersey Plaintiffs. All implied warranty claims as to out-of-state residents will proceed.

Date: September 18, 2018               */s/ Brian R. Martinotti*
                                       **HON. BRIAN R. MARTINOTTI**
                                       **UNITED STATES DISTRICT JUDGE**

---

Sheridan dismissed these claims, but argue the claims are not precluded as to non-New Jersey Plaintiffs.